**NOT FOR PUBLICATION**

```
FILED
JAMES J. WALDRON, CLERK

April 1, 2009

U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY: s/ R. Plasner, DEPUTY
```

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **In Re: GLOBAL OUTREACH, S.A.**, <br><br> Debtor. | Case No.: 09-15985 (DHS) <br><br> Judge: Donald H. Steckroth, U.S.B.J. |

## **OPINION**

**APPEARANCES:**

Kasen & Kasen
David A. Kasen, Esq.
Society Hill Office Park, Suite 3
1874 E. Marlton Pike (Route 70)
Cherry Hill, New Jersey 08003-2038
*Counsel for Debtor Global Outreach, S.A.*


Sills Cummis & Gross
Jack M. Zackin, Esq.
The Legal Center
One Riverfront Plaza
Newark, New Jersey 07102-5400
*Counsel for YA Global Investments, L.P.*

**THE HONORABLE DONALD H. STECKROTH, BANKRUPTCY JUDGE**

Before the Court is a motion filed by Debtor Global Outreach, S.A. ("Global Outreach" or "Debtor") seeking to enforce the automatic stay arguing that the Costa Rican properties at issue are property of the estate and subject to the stay. YA Global Investments, L.P. ("YA") opposes the motion contending that the Debtor does not own the properties and that a sale should go forward. At oral argument, the Court, *sua sponte*, raised the issue of whether Section 108(b) of the Bankruptcy Code was applicable to the situation at hand. The parties made submissions regarding that issue and the Court will decide Section 108(b)'s applicability at this time and will make a determination as to the underlying motion to enforce the stay at a later date.

The Court has jurisdiction over this motion pursuant to 28 U.S.C. § 1334 and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984. This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

**Background**

**I.    Debtor's Statement of Facts**[1]

The Court will focus on the facts relevant to its determination of the applicability of Section 108(b) at this time. The Debtor is a Costa Rican corporation with its principal place of business in Morristown, New Jersey. Global Outreach, LLC holds 98 shares of the Debtor and Hemangini Kothari holds the remaining 2 shares. Global Outreach, LLC is organized under New Jersey state law and also has its principal place of business in Morristown, New Jersey and is wholly owned by

---

[1] The factual recitation in this section is gleaned from *Motion of Debtor Seeking an Order Enforcing Automatic Stay*.

Hemangini Kothari. Another related entity is Global Financial Group, LLC owned by Hemangini Kothari and organized under the laws of the State of New Jersey. Anil Kothari is the husband of Hemangini Kothari, President of the Debtor, Manager of Global Outreach, LLC and Global Financial Group, LLC and a trustee of The Kothari 2000 Family Trust. YA Global Investments (formerly known as Cornell Capital Partners, L.P., a Delaware Limited Partnership) is a Cayman Islands Exempt Limited Partnership with its principal place of business in Jersey City, New Jersey.

In 2004, Anil Kothari acquired 557 acres of real estate in Costa Rica to build an ocean resort including a golf course, hotel, and condominiums. The Debtor does not own the land outright, but instead own 100% of the stock of the Costa Rican companies that own the land. Phase I of this project, known as Azulera, consisted of the construction of the hotel, condominiums, and golf course for which the Debtor obtained $85 million from three Costa Rican banks. As of May 7, 2008, the properties had an appraisal value of $239,635,736.68.

On April 12, 2007, Kothari and his accountant, Jerome J. Killian of Wiss & Company, met with representatives of YA to discuss a $35-$40 million loan that would have been subordinated to a construction loan. Kothari provided YA with financial information, completed a questionnaire, and a photo album of the site and plans for the Azulera project. In addition to the financial information, YA was also notified of pending judgments against the Kotharis and prior Chapter 7 bankruptcy filings. Allegedly, YA did not express any concern as to such information.

Due to the impending expiration of an option to purchase one parcel, Kothari requested $3.725 million from YA for the acquisition which was to be repaid in four months at an interest rate of twenty-four percent (24%). The closing took place on April 30, 2007 and included amongst the

documents was a Guarantee Trust Agreement ("Trust Agreement") due to the insistence of YA that an entity be created named Purple Skies Business, Sociedad de Responsabilidad Limitada ("Purple Skies"). Purple Skies would be 100% owned by Global Outreach serving as the repository for its interests in the Azulera properties. Purple Skies would then marshal all interests in the properties and deliver them to a trust controlled by YA called Interlex Fideicomisos, S.A. ("Interlex"). Thereafter, a loan for $41 million was negotiated, which closed in July 2007.

In January 2008, YA began to delay or refuse payments to Global Outreach and affiliates for project-related expenses. Eventually, in March 2008, Global Outreach's counsel met with YA representatives to discuss their relationship. Thereafter, on April 3, 2008, YA sent a default letter to Global Outreach listing a handful of alleged covenant defaults. On April 16, 2008, YA commenced litigation against Global Outreach, the Kotharis, and related entities in Superior Court of New Jersey, Chancery Division, Hudson County before the Honorable Thomas Olivieri. On July 15, 2008, the Chancery Court issued a preliminary injunction against YA and in favor of Global Outreach defendants. At that time, YA was unable to prove a material default. However, on November 17, 2008, the Chancery Court declared a material default due to the failure to sell thirty-two (32) condominium units by August 1, 2008 and the preliminary injunction was dissolved. Global Outreach has not been able to meets its sales' benchmarks nor has it been able to pay $10 million to YA due on January 1, 2009.

On January 16, 2009, YA sent Interlex, as Trustee, a notice of default and claim for $91,460,968.36 and further instructed Interlex to commence a public sale of the properties. Interlex sent Global Outreach and Kothari a letter dated February 13, 2009 providing notification of the

default. This letter also granted the Debtor a 15-day period beginning January 23, 2009 to cure the Events of Default pursuant to Sections 16.3 and 16.4 of the Trust Agreement. Interlex then indicated that the 15-day period expired on February 12, 2009 and notified the Debtor that under Section 20.2 of the Trust Agreement it had a 30-business day period beginning February 16, 2009 in which to pay YA all amounts outstanding. That period expired on March 27, 2009 at which time Interlex was to commence the public sale of properties. On March 12, 2009, the Debtor filed its Chapter 11 petition.

## II.    YA's Statement of Additional Facts[2]

In its objection to the Debtor's motion to enforce the automatic stay, YA states that the Debtor does not own the properties at issue and instead are owned by Interlex which was formed to hold title to the properties securing YA's $41 million loan. YA submits that after Judge Olivieri declared a material default on November 17, 2008, the Debtor has attempted to prevent the public sale through applications to the Chancery Division and an interlocutory appeal to the Appellate Division of the Superior Court of New Jersey, which were denied. YA contends that the Debtor is effectively forum shopping to prevent the sale of the properties in Costa Rican.

YA reiterates that the Debtor owns 100% of Purple Skies and that Purple Skies was formed to take title to the properties purchased for the Azulera project. Purple Skies then transferred all of its assets to Interlex. YA submits that the purpose of the Trust Agreement was to memorialize the transfer of all of the Debtor's interests in the properties and all of its interests in Purple Skies to Interlex, which would act as Trustee to YA. This Trust Agreement was entered into as a condition

---

[2] The factual recitation in this section is gleaned from *YA Global Investments, L.P.'s Objection to Debtor's Motion on Short Notice Seeking an Order Enforcing Automatic Stay.*

of the financing provided to Global Outreach by YA and provided the Trustee, Interlex, with control over the properties.

## **Discussion**

At oral argument, the Court, *sua sponte*, raised the issue of whether Section 108(b) of the Bankruptcy Code was applicable to the time periods delineated in the Trust Agreement. The parties made submissions as to that issue. The Debtor argues that Section 108(b) is applicable as the Petition was filed prior to March 27, 2009, the expiration of the thirty business-day period to pay YA under Section 20.2 of the Trust Agreement. Thus, under Section 108(b), Global Outreach argues that it would have sixty (60) days from the Petition Date to make payment to YA, at which time, if payment is not made, Interlex could proceed with the public sale on behalf of YA. On the other hand, YA counters that Section 108(b) is inapplicable because the time period set to expire on March 27, 2009 is a repayment provision not a cure of a default that triggered the right to sell. Summarily, YA argues that in reading Sections 15.1 and 20.2 together, Global Outreach was entitled to cure the default within the 45-day period for which Section 108(b) could have been applicable. However, YA takes the position that Section 108(b) does not apply to Section 20.2 since it is a repayment provision.

Section 108(b) of the Bankruptcy Code provides:

> Except as provided in subsection (a) of this section, if applicable nonbankruptcy law, an order entered in a non-bankruptcy proceeding, or an agreement fixes a period within which the debtor...may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of—

> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
>
> (2) 60 days after the order for relief.

11 U.S.C. § 108(b) (2009).

*Counties Contracting and Construction Company v. Constitution Life Insurance Company*, a case relied upon by the Debtor, is particularly instructive. In *Counties*, the Third Circuit addressed whether a life insurance policy remained in effect when a bankruptcy petition was filed prior to the expiration of the statutory grace period to pay outstanding premiums. *Counties Contracting & Construction Co. v. Constitution Life Ins. Co.*, 855 F.2d 1054, 1055 (3d Cir. 1988). The parties agreed that the grace period of the policy was property of the estate and the issue was when and if the grace period ceased being estate property. *Id.* at 1057. Constitution Life argued that Section 108(b) extended the grace period sixty days from the petition date while Counties argued that the grace period was subject to the automatic stay and thus was tolled indefinitely. *Id.* at 1057-58. The Third Circuit held when a bankruptcy petition is filed prior to the expiration of a statutory grace period, Section 108(b) can be utilized to extend the grace period sixty days from the petition date. *Id.* at 1059. Prudential Insurance Company of America filed an amicus brief arguing that Section 108(b) only extends the right to pay delinquent premiums for Counties policy but it does not compel an insurer to provide coverage for claims accruing after the grace period. *Id.* at 1058 n.4. In response to Prudential's position, the Third Circuit stated:

> We agree that the intent of the grace period so extended is to give Counties additional time in which to pay the premium; however, payment made during this period would not be equivalent to curing a default, rather it would represent an act necessary to continue the

> policy in effect. Thus, the relevant statutory wording here is the provision in [Section] 108(b) which grants a 60-day extension to "perform other similar acts."

*Id.*

In following the precedent of *Counties,* the Court agrees that Section 108(b) is applicable to extend the Debtor's repayment period under Section 20.2 of the Trust Agreement sixty (60) days from the Petition Date. Section 20.2 does not provide for curing of a default, but instead is a repayment provision. As in *Counties*, the repayment of all amounts outstanding under Section 20.2 of the Trust Agreement constitutes "any other similar act" under Section 108(b). *See id.*

*In re Hric* also provides support for the Debtor's position. The Bankruptcy Court there determined Section 108(b) is clearly intended to extend the post-foreclosure sale right of redemption. *In re Hric*, 208 B.R. 21, 25 (Bankr. D.N.J. 1997). The court stated:

> Applicable nonbankruptcy law in New Jersey does not permit a debtor to cure a default on a mortgage which has resulted in a foreclosure judgment and sale. It does, however, permit the debtor to perform a "similar act," i.e., it gives the debtor one last opportunity to pay the foreclosure judgment in full until the sheriff delivers the deed to the successful bidder at the auction. If, therefore, the debtor files a bankruptcy petition within the ten day redemption period or at any time before delivery of the deed, the debtor has up to 60 days from the petition date to redeem the property.

*Id.* at 25-26. Redemption is an act much like the repayment provision in Section 20.2 of the Trust Agreement between the Debtor and YA. *See In re Connors*, 497 F.3d 314, 318 & 323 (3d Cir. 2007) (affirming the District Court finding the right to cure a mortgage default expires at foreclosure sale, however, the redemption period is extended under Section 108(b) for sixty days as redemption is another applicable state law right).

In conclusion, Section 108(b) affords the Debtor sixty (60) days from the Petition Date to comply with the repayment provision under Section 20.2 of the Trust Agreement. During the pendency of the Debtor's Section 108(b) period, the Court will make a determination as to the Debtor's motion to enforce the stay.

/s/ *Donald H. Steckroth*
DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Dated: April 1, 2009