<u>**NOT FOR PUBLICATION**</u>

**FILED**

JAMES J. WALDRON, CLERK

**JUNE 8, 2009**

U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY: <u>s/ Ronnie Plasner,</u> DEPUTY

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

**In Re: GLOBAL OUTREACH, S.A.,**

Debtor.

Case No.: 09-15985 (DHS)

Judge: Donald H. Steckroth, U.S.B.J.

<u>**OPINION**</u>

**APPEARANCES:**

Kasen & Kasen
David A. Kasen, Esq.
Society Hill Office Park, Suite 3
1874 E. Marlton Pike (Route 70)
Cherry Hill, New Jersey 08003-2038
***Counsel for Debtor Global Outreach, S.A.***


Sills Cummis & Gross
Jack M. Zackin, Esq.
The Legal Center
One Riverfront Plaza
Newark, New Jersey 07102-5400
***Counsel for YA Global Investments, L.P.***


Porzio, Bromberg & Newman, P.C.
Terri Jane Freedman, Esq.
Douglas A. Amedeo, Esq.
100 Southgate Parkway
Morristown, New Jersey 07962-1997
***Counsel to the Official Committee of Unsecured
Creditors of Global Outreach, S.A.***


Phillips Nizer LLP
Peter W. Smith, Esq.
Court Plaza North
25 Main Street
Hackensack, New Jersey 07601
***Counsel to Global Outreach, LLC, Global
Financial Group, LLC, The Kothari Family 2000
Trust, Anil C. Kothari and Hemangini Kothari***

## THE HONORABLE DONALD H. STECKROTH, BANKRUPTCY JUDGE

Before the Court is a motion filed by Global Outreach, S.A. ("Global Outreach" or "Debtor") seeking to enforce the automatic stay arguing that the Costa Rican properties at issue are property of the estate and subject to the stay.  Also before the Court are the following filed by YA Global Investments, L.P. ("YA"):   (a) Motion for Relief from the Automatic Stay Under Section 362(d) of the Bankruptcy Code and for Mandatory or Permissive Abstention under Section 1334(c)(1)-(2) of title 28 and (b) Motion to Remand Pursuant to 28 U.S.C. § 1452(b).

The Court has jurisdiction over these motions pursuant to 28 U.S.C. § 1334 and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984.   This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

### Procedural History

The Debtor filed its voluntary Chapter 11 Petition on March 12, 2009.  On March 20, 2009, the Debtor commenced an adversary proceeding against YA and also filed a Motion to Enforce the Automatic Stay.  Thereafter, YA filed its motion for stay relief.  During the oral argument on the Debtor's Motion to Enforce the Stay, the Court allowed the parties to submit their positions on Section 108(b) of the Bankruptcy Code, after which the Court entered an Order providing the Debtor with a sixty-day extension of its deadline to utilize the repayment provision of the Trust Agreement. On April 3, 2009, the Official Committee of Unsecured Creditors ("Committee") was appointed. On April 13, 2009, the Debtor removed a state court action commenced by YA against Global Outreach, LLC, Global Financial Group, LLC, The Kothari Family 2000 Trust, Anil C. Kothari and Hemangini Kothari ("Guarantors") and the Debtor to the District Court, which immediately referred

3

the removed action to the Bankruptcy Court.  On April 21, 2009, YA filed a motion for remand of

the removed state court action.  During oral argument on YA's motions, the Court invited the

Committee to respond to the Debtor's Motion to Enforce the Stay as it had not been appointed at the

time of the initial hearing.

### Statement of Facts

**I.**     **Debtor's Statement of Facts**[1]

The Court hereby incorporates by reference and reiterates the facts recited in its prior

Opinion in this case regarding Section 108(b) of the Bankruptcy Code dated April 1, 2009.  The

Debtor is a Costa Rican corporation with its principal place of business in Morristown, New Jersey.

Global Outreach, LLC holds 98 shares of the Debtor and Hemangini Kothari holds the remaining

2 shares. Global Outreach, LLC is organized under New Jersey state law and has its principal place

of business in Morristown, New Jersey.  It is wholly owned by Hemangini Kothari. Another related

entity is Global Financial Group, LLC owned in its entirety by Hemangini Kothari and organized

under the laws of the State of New Jersey.  Anil Kothari, the husband of Hemangini Kothari, is

President of the Debtor, Manager of Global Outreach, LLC and Global Financial Group, LLC, and

a trustee of The Kothari 2000 Family Trust.  YA Global Investments (formerly known as Cornell

Capital Partners, L.P., a Delaware Limited Partnership) is a Cayman Islands Exempt Limited

Partnership with its principal place of business in Jersey City, New Jersey.  Troy Rillo and Liam Cox

are officers of YA.

In 2004, Anil Kothari acquired 557 acres of real estate in Costa Rica to build an ocean resort

known as Azulera, which would include a golf course, hotel and condominiums (hereinafter referred

---

[1]The factual recitation in this section is gleaned from *Motion of Debtor Seeking an Order Enforcing Automatic Stay ("Debtor's Mot.")*

4

to as the "Properties").  The Debtor does not own the land outright, but instead holds 100% of the stock of the Costa Rican companies that own the land. Phase I of this project, known as the Azulera Project ("Project"), consisted of the construction of the hotel, condominiums, and golf course, for which the Debtor obtained loans totaling $85 million from three Costa Rican banks.  As of May 7, 2008, the Properties had an appraisal value of $239,635,736.68.  Phase II involves the remainder of the Project including the construction of  retail and office space.

On April 12, 2007, Kothari and his accountant, Jerome J. Killian of Wiss & Company, met with representatives of YA, including Cox and Rillo, to discuss a $35-$40 million loan that would be subordinated to a construction loan.  Kothari completed a questionnaire and provided YA with financial information, a photo album of the site, and plans for the Azulera Project. In addition to the financial information, YA was notified of pending judgments against the Kotharis and their prior Chapter 7 bankruptcy filings.  YA did not express any concern as to this information.  The Debtor submits that at no time did YA question any of the financial documents provided.

Due to the impending expiration of an option to purchase one parcel of land, Kothari requested $3.725 million from YA for the acquisition, which was to be repaid in four months at an interest rate of twenty-four percent (24%).  The closing took place on April 30, 2007.  Included among the closing documents was a Guarantee Trust Agreement ("Trust Agreement") entered into at the insistence of YA.  Under the Trust Agreement, an entity named Purple Skies Business, Sociedad de Responsabilidad Limitada ("Purple Skies") was created.  Purple Skies would be wholly-owned by Global Outreach and would serve as the repository for its interests in the Properties. Purple Skies would then marshal all interests in the Properties and deliver them to a trust called Interlex Fideicomisos, S.A. ("Interlex").

5

Thereafter, short-term financing was provided by YA in May and June 2007 and ultimately a loan for $41 million was closed in July 2007.  The July 2007 loan was used to acquire the Properties and pay off the May and June 2007 Notes, with the remainder being utilized for Project costs. YA agreed to subordinate the July 2007 loan upon the closing of a necessary construction loan.  In finalizing the July 2007 loan, YA did not seek any additional financial information from the Debtor or its principals. YA proposed the draft loan documents on July 19, 2007 when the Debtor had an imminent need to close due to the upcoming maturity of the May and June  2007 Notes and the need to acquire the parcels. YA was unwilling to make any material modifications to the documents.  Due to the urgency of the situation, the Kotharis signed the documents on July 20, 2007 without their counsel present. After the arrival of their counsel, the loan closed as planned.

In negotiating the July 2007 loan, YA and the Debtor agreed to the utilization of Cushman & Wakefield of Texas, Inc. ("Cushman") to review Global Outreach's invoices.  If the invoices were correct and properly related to the Project, they would be paid within three business days.  At YA's insistence, the Debtor was to pay Cushman $22,500 per month.  This relationship has not been memorialized in a final executed document, though invoices were submitted and paid, including invoices detailing various litigations involving the Debtor and its principals.

During the Fall of 2007, three Costa Rican banks ("Construction Lenders") agreed to lend $85 million in total for Phase I construction with a loan document issued in January 2008, with the expectation that YA would subordinate its loan.  However, due to YA's declaration of default, the Construction Loan did not go forward and YA has also refused to subordinate it.

The Debtor contends that its weekend-long groundbreaking ceremonies in January 2008 were attended by political dignitaries and project consultants including Cox and Rillo of YA.  The

6

purpose of the weekend was to generate support for the Project. Many real estate brokers attended strategy sessions regarding the Project's marketing.  The weekend cost approximately $800,000 and had been pre-approved by YA.  The Debtor alleges that Kothari requested meetings with Cox and Rillo during this weekend to discuss outstanding issues, but the meetings did not take place.

The Debtor further states that YA's lack of due diligence was due to two potential buyers willing to close on the Properties within thirty days of the notice of availability of the Project for an amount higher than the July 2007 loan.  The Debtor provides the following as evidence of the alleged scheme purported by YA: (1) YA failed to approve disbursements to Global Outreach and its affiliates while still paying the Project consultants; (2) YA declared a default claiming that Global Outreach's failure to disclose certain obligations despite Global Outreach's contention it had; (3) YA's encouragement of potential claimants to pursue their claims in an effort to force a sale; and (4) YA contacted former employees, inquired as to the status of the construction loan, and requested general information about Kothari.

In January 2008, YA began to delay or refuse payments to Global Outreach and its affiliates for Project-related expenses.   In March 2008, Global Outreach's counsel met with YA representatives to discuss their relationship. Thereafter, on April 3, 2008, YA sent a default letter to Global Outreach listing a handful of alleged covenant defaults based upon a failure to disclose certain liabilities, which Global Outreach contends were disclosed. On April 16, 2008, YA commenced litigation against Global Outreach, the Kotharis, and related entities in the Superior Court of New Jersey, Chancery Division, Hudson County.  On July 15, 2008, the Chancery Court issued a preliminary injunction against YA and in favor of the Global Outreach defendants because YA was unable to prove a material default.  However, on November 17, 2008, the Chancery Court

declared a material default by Global Outreach due to the failure to sell thirty-two condominium units by August 1, 2008 and the preliminary injunction was dissolved. Global Outreach has not been able to meet its sales benchmarks nor has it been able to pay $10 million to YA that was due on January 1, 2009.

On January 16, 2009, YA sent Interlex, as Trustee, a notice of default and claim for $91,460,968.36 and further instructed Interlex to commence a public sale of the Properties. Interlex sent Global Outreach and Kothari a letter dated February 13, 2009 providing notification of the default. This letter also granted the Debtor a 15-day period beginning January 23, 2009 to cure the Events of Default pursuant to Sections 16.3 and 16.4 of the Trust Agreement. Interlex then indicated that the 15-day period expired on February 12, 2009 and notified the Debtor that under Section 20.2 of the Trust Agreement it had a 30 business-day period beginning February 16, 2009 in which to pay YA all amounts outstanding. That period expired on March 27, 2009, at which time Interlex was to commence the public sale of Properties. Global Outreach contends that the amount claimed by YA is overstated by $37,802,096.78 as equity participation is not due at this time for either Phase I or II. On March 12, 2009, the Debtor filed its Chapter 11 petition.

## II.    YA's Statement of Additional Facts[2]

YA states that the Debtor does not own the Properties at issue and that they are owned by Interlex, which was formed to hold title to the properties securing YA's $41 million loan. YA submits that since the State Court found a material default on November 17, 2008, the Debtor has attempted to prevent the public sale through applications to the Chancery Division and an interlocutory appeal to the Appellate Division of the Superior Court of New Jersey, all of which

---

[2]The factual recitation in this section is gleaned from *YA Global Investments, L.P.'s Objection to Debtor's Motion on Short Notice Seeking an Order Enforcing Automatic Stay.*

were denied.  YA contends that the Debtor is essentially forum shopping to prevent the sale of the

Properties in Costa Rica.

YA reiterates that the Debtor owns 100% of Purple Skies and that Purple Skies was formed

to take title to the Properties purchased for the Azulera Project.  Purple Skies, in turn, transferred

all of its assets to Interlex.  YA submits that the purpose of the Trust Agreement was to memorialize

the transfer of the Debtor's interests in the Properties and its interests in Purple Skies to Interlex,

which would act as Trustee to YA.  This Trust Agreement was entered into as a condition of the

financing provided to Global Outreach by YA and provided Interlex, the Trustee, with control over

the Properties.  Under the Trust Agreement, the Trustee controls the Properties and the Debtor has

the ability to reacquire its interests through the execution of documents transferring title

reestablishing Global Outreach as the indirect owner of the Properties and/or the stock in the

companies provided there are no amounts due and owing to the Trustee.  YA points out the Debtor

did not list any real property in its Schedules.

## III.    Application of Section 108(b) of the Bankruptcy Code[3]

At oral argument, the Court, *sua sponte*, raised the issue whether Section 108(b) of the

Bankruptcy Code was applicable to the time periods delineated in the Trust Agreement.  The parties

made submissions as to that issue.  The Court concluded that Section 108(b) was applicable based

upon a reading of the Trust Agreement in conjunction with the relevant case law.  The Court held

that the required conduct under the Trust Agreement was a repayment period that constituted a

"similar act" as stated in Section 108(b), thus triggering the sixty (60) day extension of time.

### Discussion

---

[3]The Court's decision and reasoning may be found at *In re Global Outreach, S.A.*, No. 09-15985 (DHS),
2009 WL 1025465, *1 (Bankr. D.N.J. Apr. 1, 2009).

## I.    Debtor's Motion to Enforce the Automatic Stay

The automatic stay is triggered upon the filing of a voluntary bankruptcy petition. *See In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 99 (3d Cir. 2008). The automatic stay acts as a "stay of the commencement or continuation of certain judicial, administrative, or other actions or proceedings against the debtor, enforcement of judgments against a debtor or the property of the estate, and other acts by creditors against debtors." *Id.* (citing 11 U.S.C. § 362(a)). The automatic stay's fundamental purpose is "to afford the debtor a breathing spell" from creditors by stopping collection efforts. *Id.* (citing *In re Siciliano*, 13 F.3d 748, 750 (3d Cir. 1994) (internal citations omitted)); *Taylor v. Slick*, 178 F.3d 698, 702 (3d Cir. 1999); *In re Krystal Cadillac Oldsmobile GMC Truck, Inc.*, 142 F.3d 631, 637 (3d Cir.1998) (citation omitted). Furthermore, the automatic stay allows for an "orderly liquidation procedure under which all creditors are treated equally" and avoids unilateral action by a creditor to obtain payment to the detriment of other creditors. *In re Krystal Cadillac,* 142 F.3d at 637 (citation omitted); *see In re Schaefer Salt Recovery,* 542 F.3d at 90 (citing *Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991)); *In re SCO Group, Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007).

The automatic stay applies to property of the estate. *See* 11 U.S.C. § 362(a). Property of the estate is defined by Section 541 and is comprised of "all legal and equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541; *see AcandS, Inc. v. Travelers Cas. & Sur. Co.,* 435 F.3d 252, 260 (3d Cir. 2006) *cert. denied Travelers Cas & Sur. Co. v. AcandS, Inc.*, 164 L. Ed. 2d 833 (2006). In the absence of controlling bankruptcy law, determination of substantive property rights in potential estate assets is governed by state law. *See Butner v. United States,* 440 U.S. 48, 54, 59 L. Ed. 2d 136, 142, 99 S. Ct. 914, 918 (1979); *see also O'Dowd v.*

*Trueger (In re O'Dowd)*, 233 F.3d 197, 202 (3d Cir. 2000) (distinguished on other grounds) (citation

omitted).   In the instant matter, the crux of the parties' dispute in the Debtor's Motion to Enforce

the Stay is whether the Azulera Project Properties constitute property of the estate to which the

automatic stay applies.

The facts presented to the Court are not straightforward with respect to title to the Properties.

The Debtor and the Committee argue that there is sufficient indicia present in the Trust Agreement

to find that the Debtor has a legal or equitable interest in the Properties.   Conversely, YA maintains

that the indicia is irrelevant and argues simply that the ownership interest in the Properties is two

steps removed from the Debtor, thus, the Properties cannot constitute property of the estate.

There is no doubt that under the Trust Agreement, the Debtor retained possession of the

Properties.   The parties' dispute is whether that possessory interest alone is sufficient to constitute

property of the estate.   *See Debtor's Mot.*, Ex. B, § 11.1. Section 11.1 specifically states:

> The Parties to this Trust Agreement hereby agree that Global shall
> remain in possession of the Properties throughout the term of this
> Trust Agreement, and Global shall have all necessary authority and
> power to use, administer, operate, develop and manage the properties
> in accordance with this Trust Agreement and the terms of the Loan
> Documents.

Possessory interests have been sufficient to qualify as property of the estate. *See In re Atl. Bus. &*

*Comty. Corp.*, 901 F.2d 325, 328 (3d Cir. 1990) ("[A] possessory interest in real property is within

the ambit of the estate in bankruptcy under Section 541, and thus the protection of the automatic stay

of Section 362."); *In re Seven Hills, Inc.*, 08-33642 (MBK), 2009 Bankr. LEXIS 974, at *15 (Bankr.

D.N.J. Mar. 25, 2009) (valid pre-petition termination of a lease does not constitute property of the

estate, while debtor retains right to assume where the debtor has "some possessory nexus or toehold

in the property"); *In re DiCamillo*, 206 B.R. 64 (Bankr. D.N.J. 1997) (citations omitted) ("[W]e

11

note. . .a possessory interest has been determined to be sufficient to qualify as property of the estate under 11 U.S.C. § 541 and to invoke the automatic stay under 11 U.S.C. § 362.").

In the instant matter, the Debtor retained much more than a mere possessory interest in the Properties.  Pursuant to Section 11.1, the Debtor also had the authority to use, administer, operate, manage, and develop the Properties.  These are rights very significant and indicative of interests qualifying as property of the bankruptcy estate.  However, the Trust Agreement provides that the right of possession may be terminated upon the occurrence of an Event of Default as outlined by Section 15.  Here, YA submits that the state court found a default occurred; however, Section 15 clearly states that the Trust shall be terminated only upon a written agreement of the parties, payment of the liabilities owed by Global, or sale of the Properties and/or stock of the Companies. Therefore, pursuant to the actual terms of the Trust Agreement, the right of possession has not been terminated since none of these three conditions have occurred. Thus, YA's contention that the default itself terminated the Agreement is incorrect.

YA articulates the position that the possessory interest may be protected by the automatic stay but the underlying real property would still be outside the ambit of the stay.  YA's reliance on residential foreclosure law to support this position is misplaced. The arrangement between the Debtor and YA was not a lease whereby the Debtor simply resided upon the property or utilized it for a commercial purpose.  Instead, this was a complex real estate transaction enumerated in several agreements, with significant rights belonging to the Debtor beyond bare possession.

The Committee's analysis of the Trust Agreement is persuasive.  In addition to its position regarding the possessory interest, the Committee also contends the Debtor's right to redeem and the right to the excess proceeds are interests constituting property of the estate to be protected by the

automatic stay.  *See Pension Transfer Corp. v. Beneficiaries Under the Third Amendment to Fruehauf Trailer Corp. Retirement Plan No. 003 (In re Fruehauf Trailer Corp.)*, 444 F.3d 203, 211 (3d Cir. 2006) (property is to be construed "generously" and includes all interests including contingent and future ones).  According to YA, the right to redeem, if it were to exist, expired on May 19, 2009 pursuant to the Court's Order regarding Section 108(b).  However, the Committee is focusing on Section 25.1, which is a provision allowing for the reestablishment of Global Outreach as an indirect owner, while YA is relying upon Sections 15.1 and 20.2 taken together providing a repayment provision, which was the focus of the Court's previous opinion in this case. The right to redeem as articulated by the Committee is an interest to be protected.

The right to excess proceeds is found at Section 21.1 which specifically provides:

> In the event that the Properties and/or stock of the Companies are sold by private agreement or public auction, the proceeds of the sale, less expenses incurred by the Trustee in effecting the sale, shall be distributed by the Trustee to the Investor in order to pay the amounts outstanding to the Investor, and any excess shall be paid to Global.

Although YA steadfastly maintains that the Debtor is two-steps removed from owning the Properties, YA's Counsel acknowledged during the hearing that any excess proceeds would eventually belong to the Debtor. *Hrg. Tr. 3:18:00-3:20:02 (Apr. 30, 2009)*.  The Committee argues that the excess proceeds are valuable to the estate as they could provide a payout to the unsecured creditors based upon the valuations provided by both parties.   Here, the right to excess proceeds under the Trust Agreement  is a contingent interest of the Debtor placing the interest within Section 541's definition of property of the estate.  *See SPS Techs., Inc. v. Baker Material Handling Corp.*, 153 B.R. 148, 152 (E.D. Pa. 1993) ("[T]he debtor's right to any surplus from the account receivable is an identifiable post-levy 'legal or equitable interest' which brings the account into Section 541's

13

definition of 'property of the estate.'); *Sterling Vision, Inc. v. Sterling Optical Corp. (In re Sterling Optical Corp.)*, 371 B.R. 680, 691-92 (Bankr. S.D.N.Y. 2007) (right to a surplus is a contingent interest that is property of the estate).

Section 363(f) authorizes the sale of property free and clear of any interest if such interest is in "bona fide dispute." 11 U.S.C. § 363(f).  It is abundantly clear that a bona fide dispute exists given the arguments made by Counsel for all parties involved with respect to the three motions presently addressed by the Court. Although YA maintains that there is no dispute as to legal title to the Properties under the Trust Agreement, the Committee and the Debtor have articulated reasoning such as the retention of possession, rights to redemption and surplus that minimizes YA's argument. Moreover, in reading the Trust Agreement and related documents, it is also apparent that the bona fides of the transfers that occurred here may also be questioned and have been done so in the Debtor's adversary complaint. Additionally, the transaction itself is convoluted with transfers from the Debtor to PSB to Interlex with retention of significant interests in the Debtor, *i.e.* possession and power to develop and manage the Properties.  Simply put, YA orchestrated this transaction and agreed to be bound by it, and now cannot attempt to step outside of the plain reading and intent of the Trust Agreement.

In its moving papers, the Debtor relies upon the Fifth Circuit's decision in *Brown v. Chesnut (In re Chesnut)*, where the Fifth Circuit determined that "arguable property" should be presumed to be property of the estate. *Brown v. Chesnut (In re Chesnut)*, 422 F.3d 298, 303 (5th Cir. 2005). The decision defined "arguable property" as "an asset to which the debtor has only an arguable claim of right." *Id.* at 300.  Although that decision focused upon the determination of whether the property at issue was separate or community property, the principle put forth regarding "arguable property"

14

is instructive here. The automatic stay is purposefully broad and property of the estate is an inclusive

concept. *See id.* at 303; *In re Fruehauf Trailer Corp.*, 444 F.3d at 211. As the Committee suggests,

the Properties at issue in the instant matter are a valuable estate asset whose sale could facilitate a

resolution of the case including a potential dividend to the Committee's constituency.

In summary, courts have routinely found that possession accompanied by other interests in

property are protected by the automatic stay.  *See Culver v. Boozer*, 285 B.R. 163, 167 (D. Md.

2002) (citation omitted) (relying upon possession, use, income and right of survivorship to

demonstrate that mere possession did not fall under property of the estate); *Twin Rivers Lake*

*Apartments v. Wallner*, 05-4560 (SRC), 2006 U.S. Dist. LEXIS 48555, *26 (D.N.J. July 18, 2006)

(relying upon *Culver* to show that mere presence on property is not a colorable legal interest). Here,

the Debtor's use, possession, management, and development of the properties coupled with the right

to redeem and the right to excess proceeds provide sufficient and multiple interests in the Properties

to constitute property of the estate.   Thus, the Debtor's motion to enforce the automatic stay is

granted.

## II.     YA's Motions For Remand Pursuant to 28 U.S.C. § 1452(b) and for Abstention

YA filed a motion to remand the state court action arguing that the Debtor's removal was

motivated by an effort to forum shop. YA contends that the state court action has progressed

substantially with the state court issuing several rulings including the declaration of the material

default and the dissolution of the preliminary injunction. YA submits that the standards used for

mandatory and permissive abstention are applicable to a remand motion.  When moving for stay

relief, YA also sought abstention and relied upon those arguments in its motion for remand.

In opposition, the Debtor counters that this Court can exercise its "related to" jurisdiction since the outcome of the Debtor's adversary proceeding or the removed state court action could "conceivably" have an effect on the bankruptcy estate's administration. *Debtor's Mem. In Opp. To Mot. Of YA for Remand*, 3 (citing *In re Celotex Corp.*, 514 U.S. 300, 307-08 (1995) & *Pacor, Inc. v. Higgins,* 743 F.2d 984 (1984)). The Debtor also submits that there would be, *inter alia*, no duplication of judicial efforts as the state court issues could readily be decided by the Bankruptcy Court, remand will be detrimental to the estate, and these issues are related to the core issue of the validity and extent of YA's lien.

The Guarantors' Opposition points out that the state court proceeding has been limited to the preliminary injunction hearings with limited discovery taken. They also argue that allowing the state court action to proceed against the Guarantors while staying the action against the Debtor would result in a piecemeal resolution. The Guarantors further contend that mandatory abstention is inappropriate as core issues exist here and that there is no prejudice to YA for the action to continue in the Bankruptcy Court.

The Committee's response to the request for remand puts forth the legitimate concern that the over seventy (70) unsecured creditors with $25 million plus in claims have no recourse in the state court action.  They argue that allowing a sale outside of the Bankruptcy Court under the terms of the Trust Agreement is detrimental to the Committee's constituency because the Properties are a valuable asset that could satisfy the secured claim and provide a dividend for the unsecured class. The Committee suggests that the state court has not yet made factual findings and believes that the Bankruptcy Court can provide a full and fair adjudication of all of the parties' claims.

Removal to federal court and remand back to state court are governed by Section 1452 of Title 28.[4]  The Court must first determine whether the removal was proper, which requires a jurisdictional analysis pursuant to Section 1334 of Title 28.  *Maintainco, Inc. v. Mitsubishi Caterpillar Forklift Am., Inc. (In re Mid-Atl. Handling Sys., LLC)*, 304 B.R. 111, 119 (Bankr. D.N.J. 2003) (citation omitted).  Section 1334(a) provides federal district courts with "original and exclusive jurisdiction of all cases under Title 11," while Section 1334(b) provides "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(a) & (b); *In re Mid-Atl. Handling Sys.*, 304 B.R. at 119.  Section 1334 is made applicable to the bankruptcy court through 28 U.S.C. § 157(a) which allows the district court to refer cases to the bankruptcy court. *Id.* at 119.  Furthermore, a Standing Order of Reference was entered by the United States District Court for the District of New Jersey on July 23, 1984. *Id.* at 119 n.9.

As used in Section 1334(b), a proceeding is one "arising under title 11" if the claims asserted in the matter are predicated on a right created or determined by title 11.  *In re Marcus Hook Dev. Park, Inc.*, 943 F.2d 261, 267 (3d Cir. 1991); *Montague Pipeline Technologies*, 209 B.R. at 299

---

[4]28 U.S.C. § 1452 states in relevant part:

(a) A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

(b) The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground. An order entered under this subsection remanding a claim or cause of action, or a decision to not remand, is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1291 of this title or by the Supreme Court of the United States under section 1254 of this title.

(citation omitted).  A proceeding "arising in" a case under title 11 includes various administrative

matters "that are found only in bankruptcy and which do not exist outside of a bankruptcy case."

*Id.* (citation omitted).  *See* 28 U.S.C. § 157(b)(2).  Proceedings "related to" a case under title 11 are

generally described as those "non-core" proceedings otherwise related to a case under title 11 and

whose outcome could conceivably have an effect on the administration of the bankruptcy estate.

*In re The Guild & Gallery Plus, Inc.*, 72 F.3d 1171, 1181 (3d Cir. 1996) (stating that an action is

related to a bankruptcy case "if the outcome could alter the debtor's rights, liabilities, options, or

freedom of action . . . and which in any way impacts upon the handling and administration of the

bankrupt estate"); *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir. 1984); *see* 28 U.S.C.

§ 157(c)(1).  Without analyzing the Court's jurisdiction over the instant matter at length, the Court

can safely find that, at the least, the current matters are "related to" the bankruptcy case as they can

have a "conceivable" effect on the administration of the estate.

Having determined that the case was properly removed to the District Court and referred to

the Bankruptcy Court, the Court must focus on the remand standard.  Remand may be for any

"equitable ground."  *See* 28 U.S.C. § 1452(b). The Third Circuit has determined that equitable "is

not to be understood as distinguishing equitable from legal grounds in a traditional sense, but,

instead, equitable signals what is reasonable, fair, or appropriate." *Geruschat v. Ernst Young LLP*

*(In re Seven Fields Development Corp.)*, 505 F.3d 237, 245 (3d Cir. 2007) (citing *Allied Signal*

*Recovery Trust v. Allied Signal, Inc.*, 298 F.3d 263, 268 (3d Cir. 2002)) (internal quotation marks

omitted). The standards for abstention, whether mandatory or permissive[5], are applicable to a

---

[5]Section 1334(c) states:

(1) Except with respect to a case under chapter 15 of title 11, nothing in this
section prevents a district court in the interest of justice, or in the interest of

18

remand motion. *See In re Donington, Karcher, Salmond, Ronan & Rainone, P.A.*, 194 B.R. 750, 759-60 (D.N.J. 1996). "Once a district court determines that it either must abstain from hearing a removed case pursuant to 1334(c)(2) or should abstain pursuant to 1334(c)(1)'s permissive abstention provisions, it can consider whether there is reason for the suit to proceed in state court. If so, there will be an 'equitable ground' justifying remand under [Section] 1452(b)." *Stoe v. Flaherty*, 436 F.3d 209, 215 (3d Cir. 2006) (citations omitted).

Mandatory abstention under Section 1334(c)(2) is appropriate where:

> (1) [T]he proceeding is based on a state law claim or cause of action; (2) the claim or cause of action is "related to" a case under title 11, but does not "arise under" title 11 and does not "arise in" a case under title 11, (3) federal courts would not have jurisdiction over the claim but for its relation to a bankruptcy case; (4) an action "is commenced" in a state forum of appropriate jurisdiction; and (5) the action can be "timely adjudicated" in a state forum of appropriate jurisdiction.

*Id.* at 213; *Street v. End of the Road Trust*, 386 B.R. 539, 547 (D. Del. 2008); *In re Mid-Atl. Handling Sys.*, 304 B.R. at 121. The standard for permissive abstention is a fact-based factor analysis. *See In re Mid-Atl. Handling Sys.*, 304 B.R. at 126 (citing *Balcor/Morristown Ltd. P'ship*, 181 B.R. 781, 793 (D.N.J. 1995)). The factors to be considered are:

---

comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

(2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

11 U.S.C. § 1334(c)(1) & (2).

(1) [T]he effect on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (6) the existence of the right to a jury trial; and (7) prejudice to the involuntarily removed defendants.

*Id.* at 126 (citing *In re Donington*, 194 B.R. at 760) (internal citation omitted)).    Furthermore, the

Court must look to the "reality of the controversy, rather than base a decision on superficial features

that appear to place it in one category or another." *Balcor*, 181 B.R. at 794.

In analyzing the factors stated above, the Court is persuaded that permissive abstention is

inappropriate in the instant matter.    The state law at issue here is neither complicated nor unsettled;

thus, the Bankruptcy Court can readily apply the substantive law to the instant matter. Moreover,

the issues are rooted in the language of the agreements entered to by the Parties.    The removed

action commenced by YA in the state court alleges, *inter alia*, breach of contract, fraud, conversion,

and accounting. These are all allegations regularly raised in the Bankruptcy Court.    The Debtor

initiated an adversary proceeding contesting the validity and extent of the lien held by YA, which

is clearly a bankruptcy issue.    The removed action and the Debtor's action are factually similar and

it would be prudent to resolve the two in the same forum utilizing state law which this Court can

apply.

There is no conceivable comity consideration here as this Court will adhere to any previous

rulings of the state court.    *See In re Diet Drugs*, 282 F.3d 220, 232 n.7 (3d Cir. 2002) ("Whenever

any action is removed from a State court to a district court of the United States. . . .all injunctions,

orders, and other proceedings had in such action prior to its removal shall remain in full force and

effect until dissolved or modified by the district court." (citing 28 U.S.C. § 1450)).    Moreover, no

jury demand has been made.    Importantly, there is also no prejudice to the "involuntarily removed

20

defendants," namely, the Guarantors, as they have clearly stated that their preference and consent to the jurisdiction of the Bankruptcy Court in an effort to avoid piecemeal litigation.

The most important factors present here are the first and the fifth. Allowing the Bankruptcy Court to adjudicate the removed action in conjunction with the adversary proceeding commenced by the Debtor provides for judicial economy and the most efficient administration of the estate. The removed action is clearly related to the bankruptcy case as the dispute is over the main estate asset, the Azulera Project Properties. As stated above, the Committee has suggested that a potential sale of the Properties could satisfy the lien of YA and also provide a dividend to the unsecured creditors. The Bankruptcy Court is the most appropriate forum to effectuate a controlled sale of these assets. Clearly, providing one forum for a sale and adjudication of the rights of all parties is the most efficient use of judicial resources, avoids duplicative efforts, and allows for a global resolution avoiding the risk of divergent outcomes in the Bankruptcy Court and the state court. The Court disagrees with YA's contention that the Debtor is forum shopping and also finds that the state court litigation has not progressed to the point of a pending trial warranting remand at this time. Based upon this analysis, YA has not met its burden in demonstrating that permissive abstention is appropriate.

Mandatory abstention as to the Debtor's adversary proceeding is clearly inappropriate. The Debtor is seeking a determination regarding the validity and extent of YA's lien which is clearly a core proceeding under 28 U.S.C. § 157(b)(2)(K). Core proceedings are those that "arise under" or arise in" title 11. *See* 28 U.S.C. § 157(b)(1); *Mullarkey v. Tamboer (In re Mullarkey)*, 536 F.3d 215, 220-21 (3d Cir. 2008). Moreover, this adversary proceeding could have a "conceivable" effect on

the estate which satisfies "related to" jurisdiction.  Thus, it is clear that YA's request for mandatory

abstention must be denied.

Moreover, the Committee submits that Section 363 provides safeguards which authorize this

Court to conduct a sale which can procure the highest and best offer while also protecting the

interests of the bankruptcy estate and its creditors, including YA.  Allowing for a sale to proceed

under the terms of the Trust Agreement – either a private sale or a public auction – could result in

value that is arguably less than the potential value the estate in its entirety could gain.

Since YA has not satisfied its burden as to abstention or remand, both requests are denied.

The remainder of YA's motion for stay relief is deemed moot as it sought relief to pursue the state

court action which was removed and remand has been denied.

## Conclusion

For the reasons stated above, the Debtor's motion to enforce the stay is hereby granted.

YA's motion for stay relief is hereby deemed moot while its motion for abstention is denied and its

motion for remand to the state court is also denied.  An Order in conformance with this Opinion has

been entered and a copy is attached hereto.

/s / *Donald H. Steckroth*

_____
DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Dated: June 8, 2009

22